IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SUSAN HODGES                                                                                      PLAINTIFF

V.                                                                         CIVIL ACTION NO. 1:16-cv-33-SA-DAS

CNCL, LLC d/b/a
THE CARRINGTON NURSING CENTER                                                DEFENDANT

MEMORANDUM OPINION

This matter arises on Defendant's Motion for Summary Judgment [45]. Defendant moves the Court to summarily adjudicate Plaintiff's claims for discrimination and retaliation as a matter of law. Plaintiff responded [49], and Defendant replied [51].

*Facts and Procedural History*

Plaintiff Hodges began working as a nurse at The Carrington Nursing Center in 2010. In April 2012, Hodges took maternity leave for the birth of her first child. After exhausting her FMLA leave, Hodges obtained special permission from the Administrator, Debbie White, to take more time off work in order to care for her child, who had been hospitalized. She returned to work about two weeks later than planned, when management informed her that she would be converted into part-time status if she did not return.

According to Defendant, Hodges proved a good employee under Debbie White. In the fall of 2013, Hodges was promoted to the position of Director of Nursing (DON). Hodges received a raise even though there was a compensation freeze in place in 2014. However, eventually, White was promoted and Nikki Williams replaced White as the new Administrator. At that time, White offered Hodges a DON position at another facility, which would have resulted in an increase in pay, but Hodges turned down the offer. Instead, Hodges remained at her position working under Williams.

In 2014, Hodges became pregnant with her second child. Hodges was worried that she was leaving her coworkers in a bind when she went on maternity leave, because she was behind on many things. However, Williams reassured her that as long as things were in order, everything would be fine. Health complications caused Hodges to go on leave earlier than planned, and she was unable to complete neglected projects. On April 1, 2015, almost one month after Hodges had taken leave, Kathy Peacock, a nursing consultant for The Carrington's management company, conducted a mock survey of the facility in a routine visit. In Hodges' office, Peacock found several bags of medications that Hodges had neglected to destroy. She also found more medications behind the file folders in the drawers of Hodges desk, including Restoril and Xanax. Both medications are discontinued controlled substances issued to The Carrington for administration to residents. Regulations required the medications be stored in a double-lock cabinet with restricted access until they were destroyed. After Peacock completed a short investigation, she reported the incident to Williams, and the two terminated Hodges immediately.

After filing her charge with the EEOC on May 4, Hodges filed the instant lawsuit alleging that she was terminated in violation of the Pregnancy Discrimination Act (PDA) and in retaliation for disclosing her pregnancy to her superiors. Furthermore, Hodges alleges that she was terminated in retaliation for taking leave under FMLA.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Plaintiff alleges that Defendant discriminated against her in violation of the Pregnancy Discrimination Act (PDA) and in retaliation for disclosing her pregnancy to her superiors, in violation of both Title VII and the FMLA. Furthermore, Hodges alleges that she was terminated in retaliation for taking leave under FMLA

A. *Plaintiff's Discrimination Claim*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In incorporating the PDA, Title VII defines the term "because of sex" as including, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The PDA further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." *Id*; *see also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

A claim brought under the PDA is analyzed like any other Title VII discrimination claim. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Plaintiff's case is built on circumstantial evidence because she has presented no direct evidence of discrimination, which means that the Court will analyze her claim under the *McDonnell Douglas* framework. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, the Plaintiff must first create a presumption of discrimination by making out a *prima facie* case of discrimination. *See Wallace*, 271 F.3d at 219. The Plaintiff must show that (1) she was a member of the protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees were treated more favorably. *See Laxton*, 333 F.3d at 579 n.1; *Grimes v. Wal–Mart Stores Texas, LLC*, 505 F.

App'x 376, 379 (5th Cir. 2013); *McLaughlin v. W & T Offshore, Inc.*, 78 F. App'x 334, 338 (5th Cir. 2003).

The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination. *See Wallace*, 271 F.3d at 219. This causes the presumption of discrimination to dissipate. *See id*. The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. *Id.*

Defendant argues that Plaintiff is unable to establish a *prima facie* case, due to her inability to establish that one who was not a member of the protected class replaced her. Even though Tammy Tomlinson was initially chosen as Hodges' temporary replacement, Audrey Ellis was selected as the interim DON because Tomlinson was unable to start until over one month after Hodges' maternity leave began. Ellis was also pregnant at the time. Plaintiff posits that Defendant made the decision to retain Ellis in the position merely to hide the fact that Defendant had discriminated on the basis of her pregnancy. However, Plaintiff has not directed the Court to any evidence of such conspiracy. Additionally, Defendant argues that it could not have done this, because Defendant made the decision to retain Ellis and move Tomlinson to the charge nurse position before Plaintiff brought her claims to the EEOC. Tomlinson's first day as charge nurse was April 6, and Plaintiff filed her EEOC charge on May 4, 2015. Thus, Defendant argues that it was unaware of Plaintiff's allegations when it made the decision to keep Ellis in Plaintiff's old position, and therefore, it could not have been to hide discriminatory acts.

Furthermore, Plaintiff has not provided facts tending to show that similarly situated comparators were treated more favorably. Instead, Plaintiff argues that because she has denied that she placed narcotics in her desk, she may overcome the *prima facie* burden. However, "[w]e

5

do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue . . . . *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982)). Plaintiff has not presented credible evidence as to a discriminatory motive. Accordingly, the Court agrees that Plaintiff has failed to carry its burden to establish a *prima facie* case of discrimination.

Even if Plaintiff had carried her *prima facie* burden, she has provided little evidence to rebut Defendants' nondiscriminatory reasons for termination. Defendant argues that in the months leading up to her termination, Plaintiff was failing to staff according to corporate policy. The record shows that the facility's corporate office sent several emails to Plaintiff telling her to staff correctly. In addition, Plaintiff's work purportedly slipped in other ways. For example, she was behind on completing incident reports, even though corporate policy required their completion as soon as possible. In some cases, the incident reports were eight or ten months behind. She failed to follow up on lab audits, and she did not return emails to her superiors efficiently. She was also behind on destroying over-the-counter medications, one of her duties as the DON. Discontinued medications were required to be double-locked in a designated secure area until their destruction, but Plaintiff's office was filled with bags of accessible, undestroyed medications.

Though Plaintiff admittedly neglected to lock some medications properly or destroy them in a timely manner before leaving, she argues that someone else might have placed the controlled medications in her desk. She refutes the allegations of poor management by saying that she was understaffed and struggling to complete all of her duties as DON. However, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory

reason." *Little*, 924 F.2d at 97. Plaintiff has failed to establish that Defendants reasons are unworthy of credence, and therefore, her discrimination claim must be dismissed.

  B. *Plaintiff's Title VII Retaliation Claim*

  A plaintiff establishes a *prima facie* case of retaliation by showing: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir. 1986) (citations omitted), *cert. denied*, 479 U.S. 1065, 107 S. Ct. 952, 93 L. Ed. 2d 1001 (1987)). After making out this *prima facie* case, the burden shifts to the employer to provide evidence that the decision was related to a legitimate, non-discriminatory purpose. *Wallace*, 271 F.3d at 219. Once a defendant produces this non-discriminatory purpose, the presumption of discrimination dissolves and the plaintiff bears the ultimate burden of persuading the fact-finder that the employer intentionally discriminated against her, and that the non-discriminatory justifications are mere pretext. *Laxton*, 333 F.3d at 578.

  Though the parties generally agree that Plaintiff engaged in protected activity and that she encountered an adverse employment action, they disagree as to causation. Plaintiff argues that the temporal relationship between her disclosure of the pregnancy and her termination suggests the causal connection required to establish a *prima facie* case of retaliation. Indeed, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993). However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and

7

the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Defendant explained that the severity of Plaintiff's failures did not become apparent until after someone else was placed in her position. The duties that Plaintiff had been neglecting had literally piled up on her last day, so as to provoke Jessica Johnson, a fellow nurse, to refer to Plaintiff's office as "a mountain of, you know, med cards and stuff that needed to be destroyed and bottles that were old." Even viewing the facts in the light most favorable to Plaintiff, she has not met her burden of proffering the final element of her *prima facie* case, that she was terminated *because of* a protected activity. Regardless, Plaintiff has not established that Defendant's explanation of the termination decision is pretext.

Plaintiff offers as evidence of pretext several arguments. First, Plaintiff argues, "corporate was not happy when Hodges had her first baby." Next, she argues that she was a valued employee, receiving praise and multiple raises until her second pregnancy, and that the change must have been because of her disclosure. Plaintiff points to several purported statements made by management, including White's statement that she had never had a DON take maternity leave, and further, White's statement that Plaintiff might not have the same job when she returned from maternity leave. She also notes Peacock's statements and facial expressions. Purportedly, when Hodges told Peacock that she was pregnant, Peacock did not offer her congratulations. Hodges reports that Peacock had a "horrid look on her face and stated 'oh, you are?'" Next, Plaintiff argues that after she told management about her pregnancy, they began complaining about her work. Plaintiff attempts to refute the accusations regarding the medication, and points blame at others who may have had access to her desk. She describes a phone call that Peacock made to the corporate office after finding the medications wherein

Peacock asked about The Carrington's ability to terminate Plaintiff while she was on FMLA leave. She questions why others were not terminated for purportedly failing to destroy medications after she was fired, including Ellis and Williams.

The Defendant has refuted each of these allegations, arguing that Plaintiff has not established that the explanations are mere pretext. Defendant argues that the Plaintiff lacks any evidence to show that anyone other than Plaintiff was responsible for the neglected medication, that Plaintiff has not produced evidence to suggest that "corporate was not happy," or that certain statements were actually made. Further, Defendant points out that the raises and praise were given after Plaintiff had taken maternity leave on the first occasion, indicating a lack of animus. Additionally, Defendant shows that Plaintiff was receiving criticism long before her pregnancy announcement, and that Peacock's facial expressions may not constitute evidence of discrimination. Defendant argues that the Peacock's phone call was made only after finding controlled substances in Plaintiff's desk, and that the incidents occurring after Plaintiff was terminated were under different circumstances, and therefore, they required different consequences.

The Court agrees. Indeed, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Wallace*, 271 F.3d at 221 (emphasis added). In sum, Plaintiff's evidence of pretext is insufficient to create a genuine issue of material fact, as it merely disputes the quality of her job performance, or it may be definitively contradicted by the record. Indeed, "a dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable

factfinder to infer that [the] proffered justification is unworthy of credence." *Little*, 924 F.2d at 97.

Finally, even if Plaintiff's protected conduct was an element in the decision to terminate her, no liability for unlawful retaliation arises if she would have been terminated even in the absence of the protected conduct. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (citing *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984) ("The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision")). Plaintiff's claim for Title VII retaliation fails as a matter of law.

### C. *Plaintiff's FMLA Retaliation Claim*

Plaintiff alleges that she was unlawfully terminated in retaliation for taking FMLA leave following the birth of her child. *See* 29 C.F.R. § 825.220(c). As with Title VII claims, the *McDonnell Douglas* framework applies to those plaintiffs who can state a *prima facie* case of retaliation. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001). As discussed, *supra,* even assuming arguendo that Plaintiff could state a *prima facie* case, none of her evidence rebuts Defendant's explanation that Plaintiff was terminated for failure to properly secure and dispose of controlled substances, compounded by inadequate job performance over time.

### *Conclusion*

Plaintiff has failed to create a genuine issue of material fact as to her PDA claim, her retaliation claim under Title VII, or her FMLA claim. Therefore, her claims fail as a matter of law and Defendant's Motion for Summary Judgment [45] is GRANTED. This case is CLOSED. It is SO ORDERED this the 5th day of September, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT COURT